## PITKIN BARNES *vs.* FREDERICK PECK.

*Error from Greene Circuit Court—*Before the Hon. H. W. COLLIER.

———◆———

A. having executed a mortgage of slaves to B, enters into a bond, with C. and D. as his sureties, conditioned to be void if A. surrenders the property mentioned therein, to B. (if equity should decree the same of right to belong to B.) and that A. further abides the decree of equity on a foreclosure—such bond is valid, and not void on the ground of usury, or for want of consideration.

In order to ensure a recovery at law, on such bond, it must appear that a decree of equity has been rendered on the precise points contained in the condition.

This was a debt on a penal bond.

Michael Kinnard, Frederick Peck, and George Seaton, made their bond to Pitkin Barnes, which, after reciting in the condition thereof, that the said Kinnard had entered into certain mortgages of sundry slaves to the said Barnes—stipulated, that if Kinnard should well and truly deliver to said Barnes, the negroes mentioned in said mortgages, together with reasonable wages for their hire, until the mortgages should be foreclosed by bill in equity, (provided equity should decree the property of right to belong to Barnes) said slaves to remain in Kinnard's possession till such foreclosure was

Barnes
vs.
Peck.

had—and further, that said Kinnard should absolutely com-
ply with such decree of equity ; the said bond to be void.

The facts agreed upon in this case, and the record, show
that a bill was filed to foreclose the aforesaid mortgages ;
during the pendency of which, the said Kinnard died, and his
administrator was made a party defendant ; that a decree
was rendered, subjecting the negroes to a sale under the
mortgages, and that on such sale the negroes failed to realise
the amount decreed to Barnes. To recover this balance,
and the wages due for hire of the slaves, the present action
was instituted against Peck, one of the obligors of the bond.

On a consideration of the matters agreed on in the case,
the court below decided that a recovery could not be had in
this action, and judgment was given for the defendant. To
reverse this judgment, a writ of error was then taken to this
court.

PECK, for Plaintiff,

Cited *Aik. Dig.* 437—2 *Cowan*, 712—2 *Saunders P. & E.*
6, 7, 8, 895—7 *Bacon's Ab.* 190, 91—*Powell on Mort.* 151,
152—3 *Comyn's Dig.* 100, 99.

ERWIN, *contra.*

4 *Kent*, 129—2 *Bridg. Dig.* 330, *s.* 38—1 *Powell on Mort.*
109—2 *Cowan*, 231—4 *Kent*, 151, 153, 154—1 *Powell on
Mort.* 116 *to* 121—2 *Fonblanque*, 260, 261—1 *Murph.* 117—
2 *John. C. R.* 30, 34—1 *Vern.* 8—190—4 *Kent.* 136—2 *Bridg.
Dig.* 346, *s.* 173—2 *ib.* 269—9 *Ves.* 271—2 *Bridg.* 341—
2 *Vern.* 520—1 *Powell*, 121, 122—1 *Vern.* 488—2 *Atkins*,
120—3 *Atkins*, 518—2 *Schoales & L.* 217, 660, 667, 668,
669—3 *Powell*, 948.

STEWART, in reply.

3 *Comyn*, 99, 107—1 *Stewart*, 556—*Toller's Ex.* 481—1
*Peters'*, 386—5 *Am. Dig.* 383.

By Mr. Justice THORNTON : .

This was an action of debt, brought by the plaintiff in error
upon a penal bond, executed by the defendants George Sea-
ton and Michael Kinnard, to the plaintiff, for the penal sum
of four thousand dollars, which bond contained the following
condition, viz : " Now, the condition of the above obligation
is such, that whereas the above bounden Michael Kinnard,
did, on the 18th September, 1820, make and deliver unto
said Pitkin Barnes, a mortgage for the following negroes,
(naming them,) which negroes were mortgaged to the said
Barnes, for and in consideration of twelve hundred and fifty
dollars, and also a mortgage on a negro man named Colonel,
for and in consideration of seven hundred and fifty dol-
lars, given on the second of October, 1821—which were
to be paid to the said Barnes on or before the 1st of
January, 1822, by the said Kinnard—Now if the said Kin-
nard do well and truly deliver unto the said Barnes, the
aforesaid negroes, and also reasonable wages for the hire of
the said negroes, from the first day of January 1823, until the
said mortgages are foreclosed by a bill in equity ; provided
the said court should decree that the said property or slaves
of right belong to the said Barnes.   The said slaves are to
remain in the possession of said Kinnard, until the said mort-
gages are foreclosed by a bill as aforesaid.   Now, if the said
Kinnard do comply with the decree of said court, then this
obligation to be null and void, otherwise to remain in full
force and virtue—in witness whereof, &c. this 28th May,
1823."

A declaration was filed by the plaintiff, with two counts ;
one upon the bond, for the penalty ; and the other, according
to our statute, alledging two breaches.  1st. The non-pay-
ment of the wages ; and 2d—for failing to comply with the
decree of the court, rendered upon the final hearing of the
cause, contemplated to be brought as mentioned in the con-
dition.

There were no further pleadings in the case, but certain

facts were agreed upon by the parties ; and the question submitted for the determination of the court, was, whether any recovery, under the circumstances, could be had against the defendant. The court below, decided that there could not ; and that question, by writ of error, is now brought up for revision in this court.

A correct decision upon the agreed case, mainly depends upon the construction which ought to be put on the condition of the obligation sued on. I will here remark, that we have no warrant in law, for departing from the plain language of any instrument, in order to arrive at its meaning. The polar star in the construction of contracts, is the intention of the parties ; but language is the vehicle of thought, and what is plainly expressed by the words employed, must be taken to constitute the intention. The general principles regulating the construction of writings, are simple—founded in the best good sense, and the wisest policy. They must be tenaciously regarded, or courts of justice will be often betrayed from their legitimate duty of expounding, into the dangerous attitude of making contracts. Wherever the meaning is plain from the words, it must be adopted. Where it is ambiguous, and that ambiguity arises on the face of the instrument, it is susceptible of no explanation; for, by indulging in conjecture, or even admitting proof *alliunde*, we incur the hazard of substituting a new and different contract, for that which the parties have themselves deliberately made, and adopted as the solemn and permanent evidence of their own intentions. When the ambiguity is not in the instrument itself, but is created by the proof of some fact *dehors*, then the foreign evidence creating the doubt may itself be met by other evidence of the same nature, and thus the ambiguity be explained. The case commonly put in the English books to exemplify the rule, is, where A. grants to B. Blackacre in the manor of Dale, and it is proved that A. owned two farms of the same name in that manor—here an ambiguity is raised uy this proof; and extraneous evidence will be heard, to identify the

land granted to B. Guided by those principles, let us apply ourselves to the construction of the condition of the bond before us. It is certainly very inartificially drawn, but to my mind, appears to contain two distinct and substantial stipulations—both pointing with unerring aim at the decree to be pronounced in the chancery suit—one of these stipulations being expressly provisional, and the other absolute. Two mortgages are first recited, as having been executed by Kinnard to the plaintiff, and to have been forfeited by non-payment of the money secured. It then proceeds to the first stipulation, which is, that if the decree of the court to be pronounced upon a bill for foreclosure, contemplated to be filed by the plaintiff, should decide the said slaves to belong of right to the said Barnes, then they should be surrendered to him, as also hire from the first of January, 1823, which stipulation, both for the hire and surrender of the slaves, was just and proper—upon the hypothesis of the proviso, that the said property did of right belong to said Barnes. The second stipulation, is, that Kinnard comply with the future contemplated decree absolutely, be that decree what it might. For aught that I can see to forbid it, it was competent for the parties thus to contract, in reference to the matters between them. It is neither usurious, nor oppressive, nor void for want of consideration ; for a debtor, though a mortgager, to afford the security which this bond supplied, to a mortgagee creditor—being in effect, nothing more than a guaranty for the performance of such things as the tribunals of justice might award. I can readily suppose that Barnes might have deemed such security essential to the safety of his rights, and that Kinnard might have executed the same without being operated upon by any other influence than a sense of justice and of duty. This being the construction which we feel bound to give to this obligation, the facts agreed, show that there was no ground of action. The provisional stipulation is ineffective, because the fact is apparent that there was no such decree as was made a condition precedent to its opera-

tion ; and the absolute stipulation is admitted to have been performed.   It was earnestly contended by the counsel of the plaintiff, that the parties had another object in view, in the execution of this instrument, than its language literally imports.   It may possibly have been intended to supply the hire of the negroes, secured by the personal responsibility of the defendant and the other joint surety, as an additional fund for the satisfaction of the mortgages—the negroes themselves, as appears from the proof, being inadequate to discharge the debt due, as ascertained by the decree of the chancellor.   If so, and either by fraud or mistake, that purpose was omitted or suppressed in its execution, in another forum such grievance may be amply redressed.[a]

a 2 John. Ch. R. 274.---ib. 585.

The judgment of the court below is affirmed.